The court now calls case number 116916, People of the State of Illinois v. Stephen Castleberry. Are you ready to proceed? Both sides? You may proceed. Chief Justice Garmon, your honors. Good morning. May it please the court. My name is Therese Bissell from the Office of the State Appellate Defender, representing the appellant, Mr. Stephen Castleberry. Your honors, I'm in a somewhat unique position this morning in that there is agreement between Mr. Castleberry and the state that the void sentence rule should be overruled. The void sentence rule developed under our former Constitution, where the legislature was the source of jurisdiction for the circuit courts. The 1964 amendments replaced the previous court system with today's singular circuit court. And under the current Illinois Constitution, a circuit court's jurisdiction is conferred by the Constitution, not by the legislature. Counsel, is it that fact, your constitutional argument? I mean, both sides seem to think that the void sentence should be overruled. Is that right? Yes, your honors. And neither side goes into a stare decisis analysis. And is it the fact that you find the constitutional provisions at issue that would not necessitate a stare decisis analysis? Is that your position? Yes, I believe so. I believe in this case, if we were to overrule ARNA, we would be following the Constitution. And really, I would say that with stare decisis concerns, we're really saying we should follow the reasoning of Belleville-Toyota, and that ARNA cannot stand. Belleville-Toyota essentially overrules the doctrine of ARNA. So we have two lines of cases that are setting out what jurisdiction is. Obviously, in criminal cases, we have the reasoning of ARNA. That is that a sentence that does not conform to statutory requirements is void because the trial court had no authority to impose the sentence. But in civil cases and in all other cases, the reasoning of Belleville-Toyota applies. So, which we believe correctly recognizes that the trial court's authority to act is not limited by the legislature, but that the Constitution itself grants jurisdiction to the courts. So the split of authority is fundamentally flawed, as there is no such distinction between criminal and civil cases exists in the Constitution's grant of jurisdiction. So we believe that it's time to recognize that and bring criminal law into line with all other areas of law. And to overrule ARNA is really a natural progression from Belleville-Toyota. If we should decide to abolish the void sentence rule, which cases should be overruled or clarified? Have you developed a list of those cases, which group they would fall in, clarified, overruled? Which cases would be overruled? Yes. Or, well... If you have, fine. If we overruled ARNA? Yes. Well, I would say that it wouldn't, I don't think that this case would be retroactive, given that this isn't necessarily a new rule of law or change. We're essentially just following the reason of Belleville-Toyota. To answer your specific question, I do not have a list of cases that would be overruled. But I believe that it's a natural progression from Belleville-Toyota. So, counsel, is it likewise your position, then, that if we agree with both of you, actually, that ARNA should be overruled? Your position is that the state would have to file a mandamus petition for a sentence not in conformity, right? Yes, Your Honors. And are the other avenues open to the court, either changing the rule and allowing direct appeals, or this opinion indicating that in circumstances such as this, a direct appeal for the state is warranted? Well, I think the key here is that the state, in this case, was aware that there was an error. And there is a bit more of a burden on the state. They are presumed to know the law. They have the knowledge and resources. And if, despite the state's arguments at trial, a court imposes a non-conforming sentence below the statutory minimum, then we believe that mandamus, or petition to file a writ of mandamus, would be a remedy, something that the state does and can do. And here, I mean, the state argued for both enhancements at trial. They knew the law. They knew the court erred in only giving one of the enhancements. But instead of filing mandamus at that time, they waited for Mr. Cassavary to appeal. And we believe that really puts a chilling effect on criminal defendants' right to appeal, this uncertainty and not knowing, you know, if they do a go-ahead with an appeal, if their sentence could be increased. Appellate court rules allow the appellate courts and the reviewing courts to decrease punishment. But there simply is no authority in the rules that allows appellate courts or reviewing courts to increase a defendant's sentence. But as a matter of policy, why shouldn't the appellate court on direct appeal be able to correct a sentence? I think it really goes back to, well, they are allowed to correct a sentence in certain situations. They're just not allowed, the rules do not allow a reviewing court to increase a criminal defendant's punishment. And I think that really goes back to a criminal defendant has a right to a direct appeal. And in a situation such as this, where the state knew of the error in the sentence, but chose to, instead of doing something at that time, such as filing a writ of mandamus, they waited for a criminal defendant to file an appeal. That really puts a chilling effect, I think that's a serious problem, puts a chilling effect on a criminal defendant's right to appeal. Would there be any restraint, constitutional or otherwise, on this court changing those rules and providing that the appellate court had such authority? I don't believe so, no. I think this court could add a new rule, change a rule if they wanted to. But under the current rules as they stand, there just simply is no authority for the state, number one, to appeal such a sentence, and for a reviewing court to increase Mr. Cassaberry's sentence on appeal. And I think that prior to ARNA, the case law established that the state could not contest the propriety of a sentence imposed on a criminal defendant. And this is a state appeal of Mr. Cassaberry's sentence, where the state is in the posture of an appellant, and they raised a new and different issue that was not raised by Mr. Cassaberry on direct appeal, and that simply is not authorized by Rule 604A. And without a defendant's appeal, there would be no way for the state to raise this issue on appeal. And again, as I mentioned, under Rule 615B, the reviewing court may reduce a defendant's punishment, but nowhere in the rule does it allow the reviewing court to increase a criminal defendant's sentence. There is a general power for the appellate court to modify, and in certain situations it will modify on the air, but the specific rule about punishment says that an appellate court simply cannot, only says that an appellate court can decrease a defendant's punishment. So nowhere does it allow the reviewing court to increase a defendant's punishment. Criminal defendants should be able to pursue direct appeals without concern that their sentences will be increased on appeal. If there is a sentence that is lower than the statute mandates, the state should seek a writ of mandamus to correct that sentence. There are no further questions, Your Honor. The Boyd Sentence Rule should be abolished, and without the Boyd Sentence Rule, the state cannot contest a criminal defendant's sentence on appeal, and the appellate court cannot increase a defendant's sentence. This court, respectively, should reverse the appellate court's order remanding for imposition of a 15-year enhancement to Mr. Cassaberry's sentence and affirm his sentence. Thank you. Thank you, Your Honors. Good morning, Madam Chief Justice, honorable justices of the Supreme Court, counsel, may it please the Court, I am Assistant State's Attorney Alan Spellberg, representing the people of the state of Illinois. And let me please clarify something to make it clear. Yes, the people are in agreement with the defense that the Boyd Judgment Rule, the Boyd Sentence Rule, should be abolished. However, we are not asking that this court overrule any cases that need not be overruled. The holding of no cases need be overruled based upon this point. And the reason why I stress that clarification is directly related to Justice Thompson's question and to yours, Justice Freeman. The reason why is that the holding of ARNA, which is that the appellate court has a sui sponte authority to correct an otherwise nonconforming sentence, in that case it was the failure to impose consecutive sentences, will continue under our understanding of the way the law works. Because the Boyd Judgment Rule, as this court has followed it since ARNA, that one particular aspect, was only significant in that it allowed claims to be, challenges to sentences, to be expanded beyond the direct appeal to any time, at any point, with the court having jurisdiction. So allowing claims many years later in collateral attacks challenging a sentence. It is that aspect of the Boyd Sentence Rule that we are agreeing should be abolished. As we state in our brief, in particular on page 12, this court has repeatedly held throughout the last well over 100 years, that there is no distinction on direct appeal between a void and avoidable judgment. And in this case, in this court, in People v. Harris, this court examined an issue very similar to ARNA, where the appellate court looked at a failure to give consecutive sentences, ruled sui sponte that consecutive sentences were required, and this court affirmed that. And what this court held in Harris specifically was that the appellate court has inherent authority on direct appeal to correct a non-conforming sentence. It is that rule that we are saying should still remain. It is that rule which the appellate court in this case applied. That it looked at a sentence which by definition was non-conforming with the required statutes, and rather than turning a blind eye to what was clearly an illegal sentence, corrected it as required by the applicable statutes. That sentence needed to be corrected because the defendant was the one who invoked the appellate court's authority, who brought the judgment under appeal to the appellate court's jurisdiction, and asked the appellate court to reverse that judgment. The appellate court, however, affirmed that judgment, but it could not affirm the judgment while at the same time recognizing an inherent flaw in the sentence. The sentence is an inherent part, an important part, a necessary part of any conviction, and in this case, one of the defendant's aggravated criminal sexual assault convictions was clearly improper. Is there a limit on that authority, that inherent authority of the court? Certainly we've had other cases where this court has directed the appellate court to be very cautious about reaching beyond the issues as they're presented. Parties, for example, for finding, I think this is one of the arguments, says that the appellate court should not look for rights to be wronged, wrongs to be righted, excuse me. Are there limits to that inherent authority? Absolutely, Your Honor, as we state in our brief, the limits are defined very clearly in this court's decision in People v. Givens. It must be a clear and obvious error, not one requiring interpretation, not one requiring further factual development. That is precisely what happened in this case, that's precisely what happened in Arna, in Harris, in every other case where this court has applied the void judgment rule, because in every case the court looked at what the undisputed facts were, and then looked at the pertinent statutes, and realized that the sentence that was imposed by the trial judge did not match the requirements of the legislature. That's what happened here. This defendant was convicted of two counts of aggravated criminal sexual assault while armed with a firearm. The trial court imposed nine-year sentences on the core crimes for each of them, and added one additional 15-year firearm enhancement. However, as is recognized by the appellate court, the minimum sentence for each crime, for each offense, was 21 years, and yet one of the offenses received only a nine-year sentence. That clearly was nonconforming. It was a clear and obvious error. And so under Givens, the appellate court had the authority to do exactly what it did. I know that theory then. Here we have the state raising this issue in the trial court, correct? Yes, Your Honor. What if the state doesn't raise it in the trial court? Is it forfeited under your interpretation of the authority of this appellate court? Well, it could be forfeited, obviously, yes. And that's where Arna was significant, where Harris was significant, in that they were Sus fonte reversals, or Sus fonte remands by the appellate court. Because, again, consistent with what Givens said, and consistent with what Rule 615b2 says about modifying the judgment, when it is clear and obvious, Givens specifically says the forfeiture can be overlooked at that point, that it is no longer beyond the court's authority. We're not governed by the plain error rule. Givens specifically likens this inherent authority of the appellate court to the plain error rule. And so that is why, if the state hasn't made the argument, but the appellate court notices it, then clearly the appellate court has the authority to grant it. The inherent authority is recognized by Harris. And so when counsel argues that there is no authority for the appellate court to correct a clearly non-conforming sentence absent the void judgment rule, she's just wrong. This court, going back well before ARNA, in Dixon and Scott, where this court looked at Rule 615b2 and also at Rule 604 regarding the state's ability to appeal, and said that the appellate court has the power to modify the judgment and to remand for imposition of sentence on an incomplete judgment, even though it could result in an increase in punishment for the defendant, this court recognized that power by the court. That's what the ARNA holding really was. Other than the label of voidness, the holding of ARNA was no different than it existed in Scott and Dixon. And that's why this court's decision in ARNA specifically cited Scott and Dixon. Would amendment to 604a solve the problem? An amendment regarding the state's ability to point out this issue? If there were a problem, I suppose that could clarify it. I'm not saying here that there is a problem in that regard, given this court's long history. Also, I would point out that 604 is typically viewed as the ability of state to bring an interlocutory appeal, but this is not an interlocutory matter at all. This was a final judgment that was brought to the appellate court by the defendant. And so therefore, as the appellate court is reviewing the entire judgment, it can modify and correct whatever needs to be corrected. That's been consistent with this court's view of appellate court authority as long back as the 1964 judicial amendment. If ARNA isn't overruled, or is overruled rather, and we don't amend the rule, and we don't, in this opinion, allow for a direct appeal for the state, these circumstances are... Is then your only recourse, Mandamus? I suppose Mandamus would always still continue to be a recourse. Would that be available to you here? It could have. I would point out that at the time the trial judge ruled in this case saying that only one firearm enhancement would be applied, there was absolutely no case law regarding the firearm enhancements for aggravated criminal sexual assault, whether or not you could have multiple enhancements in that situation. And part of the reason why there was no case law, there has been since then, but part of the reason why there was no case law at that point was because we had such a long history regarding the constitutionality of the firearm enhancements. We never got to the proper application in an individual case as this case might have presented. And so the decision was made, and I can make this clear, the decision was made that a Mandamus might not be proper because there was no clear right to relief in that case, which is one of the absolute requirements to be able to bring a Mandamus. Over time, after the defendant brought the appeal, we were able to look at it again and we were able to make the determination that the statute was very clear as what it said. And so we could point out the error to the appellate court. But we weren't necessarily seeking any particular relief. We weren't in the role of an appellant, as the defendant would say. Instead, we were there as the other side saying the judgment has to be affirmed and it has to be affirmed in conformity with the governing statutes. And that's really what the defendant's argument is all about. The defendant's argument is about a request to have the appellate court, even if they reject his arguments to reverse the conviction, to require the appellate court to accept the conviction and affirm it while knowing that there is an error in the judgment itself. But if we accept your view, are we punishing the defendant for making or appealing his case? No, Your Honor, I don't believe that's true at all, because that's the exact same argument that was made in Dixon and Scott, whether or not the additional sentences could be imposed for the unfinished convictions. That's the exact same argument that was made in Arna and in Harris and in Garcia. Just a litany of cases, this Court has always recognized that the appellate court is required to look at the judgment itself. It isn't necessarily restricted to what the defendant wants him to do, what's the appellate court to do. And so because of that, the defendant does have a risk that there might be further sentences imposed, further convictions recognized by the appellate court. That's a long-standing recognition. He doesn't have that right to the wrong outcome. And that's what happened. And so yes, we do believe that the void sentence rule as expressed in Arna is improper in light of Belville-Toyota, in light of Louis Saar, in light of Steinbrecher, that the rule of jurisdiction that we have here in Illinois is one of two aspects instead of three. The two aspects are subject matter jurisdiction as defined by the Constitution and personal jurisdiction over the parties. The third instance, the inherent authority to render that particular judgment, is not consistent with our view of the Constitution, our view of jurisdiction, and it is a relic of the pre-1964 case law. And so for that reason, we say that it should be recognized as no longer an aspect of voidness. Voidness as this court stated in 2012 in People v. Hughes, converts two aspects. When the court doesn't have subject matter jurisdiction or doesn't have personal jurisdiction. It is not that third aspect that continues to carry on. People v. Davis, this court's decision from 1993, made it clear that voidness is a term that is utilized far too frequently in less precise situations. That's what we believe happened in Arna, and we take the responsibility that it was the state relying upon the People v. Wade decision in Arna that raised But Davis makes it clear that voidness is a term which is used imprecisely and you must look to the context. And that's why I started off my argument by pointing out that there is not a single case that would need to be overruled because all of this court's cases, with the exception of People v. Thompson, all of this court's cases involve correcting improper sentences on the direct appeal. And judgments on direct appeal, avoidable judgments, are subject to the same rule of correction as void judgments are. The only difference is for collateral attacks, and the holding of People v. Thompson is that a void judgment can be challenged in any collateral attack in any court with jurisdiction irregardless of the prior assertion. There's no waiver, there's no forfeiture. That holding would still remain true. Counsel's argument, however, would have this court wipe away all of those cases. That is not a position that we are espousing, it is not a position that we are agreeing with. We are taking a very limited, narrow road asking this court to clarify its prior holdings regarding the void sentence rule. It's for that reason we would ask this court to affirm the appellate court's judgment in this case and remand the matters to the trial court for imposition of sentence on the second aggravated criminal sexual assault. Thank you. Thank you. I'd like to just make a few points, Your Honor. First of all, there simply is no authority under Rule 615B to increase the defendant's sentence. The specific controls over the general, and although the rule 615B may give reviewing courts the general power to modify sentences, 615B4 specifically states that the court cannot increase a criminal defendant's I'm sorry, 615B4 says that the court can decrease punishment, but nowhere in the rule does it give the court the authority to increase the defendant's punishment. Now this was the state acting in the posture of an appellant. The state raised an issue that was not raised by Mr. Castleberry on appeal, so it was not just a response to Mr. Castleberry's argument. They raised a new and different issue. As far as mandamus goes, obviously the best system, ideally, the sentence would be would get it right at trial between the judge and the state to get everything right. But when the state knows at sentencing that there was an error in the sentence, and at that time the statute said, made it clear, that there should have been two enhancements imposed. And when the state knows at sentencing that the trial court had made an error, then a clear right to relief has been established, and the state should act on that and seek to, through a mandamus action, to receive that relief. And the defendant has to act on sentencing issues right away. So I would argue that in the interest of fairness, so should the state. I believe that by not filing a writ for mandamus, but instead waiting for Mr. Castleberry to raise his own direct appeal, and then raising the sentencing issue, that's a serious problem, and it really affects the finality of judgment, and puts a chilling effect on a criminal defendant's right to appeal. If there are no further questions. If we were to agree with you that our current rules do not provide for the state to raise sentencing in the defendant's appeal, what happens to Mr. Castleberry? I believe that Your Honor should just affirm his sentence. There has been no other authority cited besides ARNA, which would give the reviewing court power to remand the trial court for the imposition of the enhancement. So we would ask that Your Honor affirm his sentence. And would mandamus be an avenue still available to the state? Well, technically there is no time limit for mandamus, but again, I believe that, I mean, when the state knows it's sentencing, and mandamus is, you know, you have to establish a clear right to relief. When the state knows it's sentencing, that, you know, that there was an error, that the state should have acted at that time. And, you know, again, in fundamental fairness, you know, the defendant has to act on sentencing issues pretty much right away, and so should the state. That would be our position. Are there no further questions? And that would be, with respect to this defendant, even if this court chose to use the option to allow a direct appeal from the state in these instances, you would say that would be perspective only? That would be a perspective effect, yes. And that would not apply to Mr. Castleberry. Thank you, Your Honors. Thank you. Case number 116916, People of the State of Illinois v. Stephen Castleberry, will be referred to Ms. Bissell and Mr. Felberg. Thank you for your arguments today. You're excused.